Daniel Olmos (CA SBN 235319)
Camden Vilkin (CA SBN 304720)
Nolan Barton & Olmos, LLP
600 University Avenue
Palo Alto, Ca. 94301
Tel.  (650) 326-2980
Fax  (650) 326-9704

Attorneys for Defendant
Jizhong Chen

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>JIZHONG CHEN,<br><br>    Defendant. | Case No. 19-CR-00056 EJD<br><br>**DEFENDANT JIZHONG CHEN'S OPPOSITION TO NON-PARTY APPLE INC.'S MOTION TO QUASH A DEFENSE SUBPOENA** |

# INTRODUCTION

This prosecution alleging theft of purported trade secrets from Apple, Inc. may well be unprecedented. Undersigned counsel has been involved in defending cases under the Economic Espionage Act for more than 15 years. Defense counsel has also been involved in several ongoing nationwide efforts to identify and catalogue all EEA cases ever prosecuted across the country. This appears to be the first case in the history of the Act which has alleged theft of trade secrets from a then-current employee of the accusing company without *any* allegation or evidence that any alleged trade secret was transferred to a third party, or even that any third party was ever identified as being involved. Mr. Chen was an employee of Apple when this case was initiated; there is no evidence or allegation that he transferred any alleged secret to anyone or otherwise carried away any confidential information whatsoever, nor is there evidence or allegation that any third party could have or would have received or benefitted from any trade secret.

Against that backdrop, the defense sought and was granted by the Court a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c) to Apple which ordered the production of 32 categories of documents. Following service of the subpoena, the defense and Apple met and conferred several times and the defense agreed to narrow numerous categories, and to eliminate one entire category of documents. The defense also agreed to a precise definition of AA,[1] which effectively narrowed still other categories of documents.

Now, Apple seeks to quash 16 categories of documents which plainly meet the standards set forth in *United States v. Nixon*, 418 U.S. 683 (1974). The company primarily relies upon an order from an EEA case from 14 years ago—*United States v. Lee, et al.*, Case

---

[1] Mr. Chen does not concede the need to redact all the information that Apple redacted in its Motion to Quash. But to avoid any possible issues with confidentiality and avoid redactions in this opposition, this opposition uses "The Project" in place of the term Apple refers to in the Motion to Quash at page 2, line 18, and uses "AA" in place of the term defined at Apple's Motion to Quash at page 6, lines 14-20.

No. 06-cr-424 JW, Docket No. 127 (N.D. Cal. 2009)—in which undersigned counsel was involved. To the extent that order addressed requests similar to Nos. 14-18 (in summary, records of disclosures of the alleged trade secrets to third parties) in this case, Apple ignores that (1) the 2009 order was limited to the language of the initial requests, and (2) a subsequent order in the same case which addressed the same requests but with limiting language similar to the language in the instant subpoena acknowledged that the requests had been narrowed to include a specific time period and were thus ordered produced. *See Lee*, Docket No. 154. Notably, similar Rule 17(c) requests in more recent cases with time limitations as have been included here have also been ordered produced, and have survived motions to quash. *See, e.g., United States v. Chen, et al.*, Case No. 17-cr-603 BLF, Docket No. 75 (N.D. Cal. 2020), *United States v. Wenfeng Lu*, Case No. 12-cr-277 AG, Docket No. 114 (C.D. Cal. 2016).

The Court should deny Apple's Motion to Quash in its entirety and order production of the ordered material forthwith so that Mr. Chen can prepare for trial.

## ARGUMENT

### I. The legal standard governing Rule 17 subpoenas.

To obtain a Rule 17 subpoena, Mr. Chen must show relevancy, admissibility, and specificity. *United States v. Nixon*, 418 U.S. 683, 700 (1974). In *Nixon*, the Court affirmed the issuance of a subpoena even applying a "particularly meticulous" review of the Rule 17 requirements. *Id.* at 702. *Nixon* reasoned there was a "sufficient likelihood" that the subpoenaed records would contain relevant evidence even though the special prosecutor could not describe "fully" the contents of the subpoenaed recordings. *Id.* at 700. *Nixon* also held the special prosecutor met the "relevancy" requirement by showing that "*at least part* of the conversations" related to the charged offenses. *Id.* (italics added).

### II. Applicable law regarding trade secrets and the relevancy of the requested records.

Mr. Chen will respond to Apple's specific arguments below, but a recurring issue involves the elements of the charged offense and is worth discussing at the outset. Apple

objects to many of the requests on relevancy grounds but fails to understand why many of the requests seek relevant evidence under the applicable statutes.

To prove the existence of a trade secret, the government must prove that:

(a) The information is owned by the entity claiming it as a trade secret;

(b) The information is actually secret in that it is not generally known to, nor ascertainable by, the public;

(c) The owner of the information took reasonable measures to keep the information secret; and

(d) The information has independent economic value because it is secret (i.e., not generally known to or ascertainable by the public).

18 U.S.C. § 1839.  The element that the owner "took reasonable measures to keep the information secret" plays an especially important role in refuting Apple's objections and is not discussed in detail in Apple's motion.  Any documents tending to show that Apple took or failed to take reasonable measures to keep the information secret is relevant under § 1839.

In addition to proving the existence of a trade secret, to prove theft of trade secrets under 18 U.S.C. § 1832(a) as alleged in the Indictment, the government must prove:

(a) The owner of the information did not consent to the defendant taking, copying, or possessing the information;

(b) The defendant knew the information was a trade secret;

(c) The defendant intended to convert the trade secrets to the benefit of someone other than the owner of the information; and

(d) The defendant intended or knew that his actions would injure the owner of the information.

The elements that Mr. Chen "knew the information was a trade secret" and that he "intended or knew that his actions would injure" Apple play important roles in establishing the relevance of

several of the requested categories of materials.  The knowledge element often provides a non-hearsay purpose for records because the fact a statement was made tends to prove that someone who heard or read that statement has knowledge of the matters asserted, regardless of whether the matters asserted are true.  Apple makes several hearsay objections but does not meaningfully discuss this non-hearsay purpose that is relevant to an element of the offense.

**III.   The subpoena requests satisfy the *Nixon* criteria and the Court should deny Apple's motion.**

    **A.   Request No. 5 is highly relevant on the question of whether Apple took reasonable measure to protect the information.**

Broadly speaking, Request 5 seeks records of IP or security audits related to the protection of information that Apple claims is a trade secret or otherwise confidential.  Apple disputes the relevance of such records (Mot. at 6), but these records are highly probative regarding an element of the offense: whether Apple "has taken reasonable measures to keep such information secret[.]"  18 U.S.C. § 1839(3)(a).  This request seeks relevant information about the lack of reasonable measures taken by Apple to protect its information.  Apple also says Mr. Chen can show "no likelihood that such evidence [of security audits] actually exists" (Mot. at 5:25), but if no records of any such audit exists, the absence of such records tends to show that Apple did not take "reasonable measures to keep such information secret," and is thus relevant to disprove the element of 18 U.S.C. § 1839(3)(a).  The request seeks highly probative records.

Regarding admissibility, Apple mistakenly contends that the request calls for "inadmissible hearsay" because the relevance of the audit records would be for the truth of "the matter asserted."  (Mot. at 5.)  First, the records or portions of them might not be offered for the truth of the matter asserted, so it is not obvious that the records would be hearsay in the first place.  And even if the records contain hearsay, they likely will be admissible to prove the occurrence or non-occurrence of such audits under two hearsay exceptions in Federal Rule of

1  Evidence 803.  One exception makes the absence of a record of a regularly conducted activity
2  (like an audit) admissible to prove that the activity (audit) did not occur.  Fed. R. Evid. 803(7).
3  The other exception makes records of a regularly conducted activity admissible.  Fed. R. Evid.
4  803(6).  Apple fails to mention either of these hearsay exceptions despite their obvious
5  pertinence to this issue.

6        Apple also objects that the request is insufficiently specific (Mot. at 5), but Apple fails
7  to support that objection with any legal authority.  "A request will usually be sufficiently
8  specific where it limits documents to a reasonable period of time and states with reasonable
9  precision the subjects to which the documents relate."  *United States v. Wittig*, 250 F.R.D. 548,
10  552 (D. Kan. 2008).  Here, the request states with reasonable precision the subjects to which
11  the documents relate: security or IP audits related to protecting information that Apple claims
12  is a trade secret, limited only to The Project.  Defense counsel made the request more specific
13  by limiting it to information related to AA, which happens to be the alleged trade secret
14  charged in the indictment.  *See* ECF No. 12 at 1:24-25.  Apple objects that Mr. Chen "fails to
15  identity any particular audit," (Mot. at 5), but of course that is impossible because Apple is the
16  custodian of these records, not Mr. Chen.  Apple's theory that specificity requires identifying a
17  particular audit also fails to consider that Apple's response might reveal the lack of such audits,
18  which is relevant under 18 U.S.C. § 1839(3)(A) and admissible under Fed. R. Evid. 803(7).
19  The request seeks relevant, specific information about the lack of reasonable measures taken
20  by Apple to protect any alleged trade secret.

21      **B.**    **Requests Nos. 9 and 10 are specific and seek relevant and admissible records related to the secrecy of the alleged trade secrets.**

22  Request 9 seeks records of Apple's identifying or designating images of AA as
23  confidential or as trade secrets, and Request 10 seeks records of Apple employees' accessing or
24  otherwise being provided images of AA related to The Project.  These requests easily satisfy
25  the *Nixon* criteria.

---

*United States v. Chen*; Case No. 19-cr-00056-EJD                                                    6
Def. Chen's Oppo. to Non-Party Apple Inc.'s Mot. to Quash Subpoena

1    Both requests are specific and tailored to records having to do with AA and The Project. And while Apple claims it would have to produce "every single document that is in any way related to the [AA] of [The Project] and bears a confidentiality legend" (Mot. at 8), Apple fails to note that the request—like every request in the subpoena—is limited to the eight months from June 2018 through January 2019. Apple also fails to note that the request does not cover "every single [such] document" but only those records of Apple's designating *images of AA* related to The Project as confidential, proprietary, or a trade secret. *Text* about AA or The Project would not be covered by this request. In other words, the request is more specific than Apple contends.

The records are also relevant and admissible. Apple's identification of and designation of images of AA as confidential or a trade secret, and records of employees' accessing images of AA, are relevant to whether Apple took reasonable steps to keep such information secret. *See* 18 U.S.C. § 1839(3)(A). Those identifications or designations would also be relevant to Mr. Chen's knowledge that the information was a trade secret and that the offense would injure any owner of the trade secret. *See* 18 U.S.C. § 1832(a). To establish relevancy, the defense needs to show that there is a "substantial foundation for believing that the [evidence sought] would furnish defensive matter." *United States v. Reed*, 726 F.2d 570, 576-77 (9th Cir. 1984).

Apple contends these requests fail to seek relevant evidence because the Complaint in this case alleges that Mr. Chen's and other Apple employees' confidentiality obligations arose from their Intellectual Property Agreements, Apple secrecy trainings, and their "disclosure" on The Project. Mot. at 7:24-26. Apple further contends that records of Apple's identifying images of AA as trade secrets are not relevant because the Complaint does not allege that Apple's identification of any document as confidential "was the source of Mr. Chen's confidentiality obligation or a method that Apple used (or needed to use) to protect its trade secrets." Mot. at 8:1-4. These arguments misunderstand the law at issue, which requires proof

1   that Apple "has taken reasonable measures to keep such information secret[.]" 18 U.S.C. §
2   1839(3)(A).  These records are relevant to whether Apple took such "reasonable measures,"
3   and Apple cannot render the records irrelevant by claiming that there was a different "source of
4   Mr. Chen's confidentiality obligation."  The law focuses on *Apple's measures to protect*
5   *information*, which is a separate question from "what was the source of Mr. Chen's
6   confidentiality obligations?"  And despite Apple's claim that it did not "need[] to use" a
7   particular measure to protect its trade secrets (Mot. at 8:3), that determination is not Apple's to
8   make—the jury will decide whether Apple took "reasonable measures to keep such
9   information secret," § 1839(3)(A), and expert testimony is typically offered on the subject of
10  which measures are reasonable.

11       Other than making the relevancy objection, Apple does not argue the admissibility
12  *Nixon* factor.

13       Last, Apple objects on grounds of work product and an unspecified privilege that is
14  presumably the attorney-client privilege.  Mot. at 8-9.  Apple's arguments are superficial, and
15  the Court should closely scrutinize any claims of privilege after ordering production of these
16  records to the court for an in-chambers privilege review.  Apple contends, for instance, that a
17  document identifying information as a trade secret would "almost certainly have been the
18  determination of a lawyer" that would be privileged or work product.  Mot. at 8.  But it is not
19  difficult to imagine a non-privileged scenario.  A lawyer could inform Apple that something is
20  a trade secret and advise Apple to take reasonable measures to protect it (§ 1839(3)(A)) by
21  identifying and designating the information as a trade secret in Apple's communications to
22  employees, independent contractors, and anyone else who might access the information.  The
23  lawyer's advice to Apple might be privileged, but Apple's identifications and designations of
24  information as a trade secret *in communications with non-lawyers* would not be.  That is just
25

1  one of many possibilities where such a designation would not be privileged.  The Court should

2  review records that Apple seeks to withhold on privilege grounds.

3    **C.**  **Requests 12 and 13 satisfy the *Nixon* criteria and should be affirmed.**

4    Apple mistakenly contends that these requests—which seek records related to Apple's

5  valuation of The Project or internal Apple discussions about terminating or downsizing The

6  Project—"call for material that is irrelevant until sentencing." Mot. at 9:4-5.  To the contrary,

7  these records are probative of an element of the offense.

8    To prove the existence of the alleged trade secret, the government must prove that the

9  information is valuable because it is secret, *i.e.*, that "the information derives independent

10 economic value, actual or potential, from not being generally known to, and not being readily

11 ascertainable through proper means by, another person who can obtain economic value from

12 the disclosure or use of the information[.]"  § 1839(3)(B).  Apple's assessment of The Project's

13 value is probative of whether information about The Project "derives independent economic

14 value . . . from not being generally known" to others.  § 1839(3)(B).  And any plans to

15 terminate or downsize The Project similarly tend to show that information about The Project

16 might *not* derive independent economic value from not being generally known.  These are

17 issues to be disputed at trial, contrary to Apple's interpretation that they are irrelevant.

18   The requests are sufficiently specific as they are limited "to a reasonable period of time

19 and state[] with reasonable precision the subjects to which the documents relate." *Wittig*, 250

20 F.R.D. at 552.  Apple contends it would have to "scour a vast set of records" in response to the

21 subpoena (Mot. at 9), but the subpoena is limited to a specific time frame, and Apple surely

22 knows whether it evaluated The Project's valuation or discussed terminating or downsizing it

23 during that time frame, and if so where those records are likely to be found.

24   Other than its relevancy objection, Apple does not dispute the admissibility *Nixon* factor

25 for these requests.

**D. Requests 14-18 satisfy the *Nixon* criteria and are probative of whether the information constituted a "trade secret" under federal law.**

In arguing that these requests are not sufficiently specific, Apple construes them more broadly than they actually are. Apple claims, for instance, that the requests "seek documents on *every* third-party interaction Apple had related to [The Project AA] during the relevant time period[.]" Mot. at 11:3-4 (original italics). But the subpoena does not seek documents from "*every*" third-party interaction. The requests are limited to: *disclosures* of AA images to third parties, which Mr. Chen limited to "the actual transmission of images of" AA (Request 14, Mot. at 10:22); executed licensing agreements or non-disclosure agreements and violations of any such agreements (Requests 15-17); or the *use of AA images* by a third party at Apple's request (Request 18). Many of Apple's third-party interactions related to AA would fall outside these categories, such as every interaction that did not involve either the actual transmission of AA images or the execution of a licensing agreement or NDA. Contrary to Apple's claim, the requests do not seek records from "*every*" interaction Apple has with third parties, and the subpoena is far more specific than Apple claims.

Apple claims the requests "call for mostly irrelevant material," but that is the entirety of what Apple says about the relevancy requirement. Mot. at 11:10-11. But Apple seems to understand the relevancy because Apple also acknowledges that the requests are pertinent to whether "Apple may not have adequately protected its [The Project] trade secrets." Mot. at 11:2. Records about disclosures to third parties, licensing agreements and violations of any such agreements, and third-party uses of AA images at Apples' request are all relevant to whether Apple took reasonable measures to keep the information secret (§ 1839(3)(A)) and whether the information still derives (or ever derived) independent economic value from not being generally known (§ 1839(3)(B)).

As for Apple's invocation of the work-product doctrine (Mot. at 11:18-20), Mr. Chen respectfully suggests that the Court review the records and assess whether the doctrine protects

these documents. Apple has not established the doctrine's applicability, and it is not clear that the records were "prepared in anticipation of litigation or for trial," as required for the work-product protection. *See United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). The defense will defer further argument on this point until it can assess Apple's forthcoming privilege log. *See* Mot. at 14-15.

Other than its relevancy objection, Apple does not dispute the admissibility factor for these requests.

### E. Requests 11 and 23 satisfy the *Nixon* criteria and should not be quashed.

Request 11 seeks emails received or sent by Mr. Chen "regarding the confidential or proprietary nature of [AA] related to [The Project]." Contrary to Apple's claim, these records are highly probative and relevant. An element of the charged offense is Mr. Chen's knowledge that the information was a trade secret. 18 U.S.C. § 1832(a). The requested emails are highly probative of his knowledge on that question. The emails are also admissible. The hearsay rule will not exclude these emails because an exception may apply, or because they have relevance based on the fact the emails were sent or received, separate and apart from the truth of the matters asserted in the emails. Request 11 is also specific, made even more so by defense counsel's agreement to limit the request only to emails received or sent by Mr. Chen. *See* Mot. at 11-12.

Regarding Request 23 for Mr. Chen's Outlook .pst file, it is sufficiently specific because it is limited in its temporal scope and it seeks a data set that is easily identified. Moreover, the .pst file will include the emails captured by Request 11, which are plainly relevant. Other theories of relevance are covered in Mr. Chen's sealed memorandum in support of the Rule 17(c) motion, and the defense is not required to reiterate those theories of relevance here in order not to reveal defense strategy. However, permitting Apple as a non-party litigant to determine which emails are relevant to Mr. Chen's defense is not permissible, particularly when

Apple has already itself reviewed the .pst file in order to produce some, but far from all, emails from .pst file to the government to support this prosecution.

### F. Requests 27, 29, and 31 seek relevant, admissible, and specific evidence.

Broadly, these requests seek records related to Apple's investigation of Mr. Chen (Request 27), statements about Mr. Chen made by Apple employee Brian Carr (Request 29), and contacts between Apple and law enforcement (Request 31). Apple contends these requests "all call for inadmissible hearsay" and thus fail the *Nixon* requirement of admissibility. Mot. at 12. Yet Apple does not mention any of the numerous hearsay exceptions that affect this question or that the records can be offered for a non-hearsay purpose. Some applicable hearsay exceptions include: a present sense impression (FRE 803(1)); a then-existing state of mind (FRE 803(3)); a record of a regularly conducted activity or its absence (FRE 803(6), (7)); or a statement against interest, such as a statement that would "invalidate the declarant's claim" against Mr. Chen for theft of trade secrets (FRE 804(3)).

Apple does not dispute the *Nixon* factors of relevance or specificity for these requests. *See* Mot. at 12-13.

Regarding the claim of privilege and work-product protection (Mot. at 13-14), Mr. Chen will, for the most part, defer any argument until assessing Apple's forthcoming privilege log. He notes, however, that Request 31 seeks records of Apple's contacts with third parties such as "any law enforcement officer, government investigator, or [AUSA] relating to the investigation of Jizhong Chen." Apple's disclosures to third parties would likely destroy any protections that previously existed under the attorney-client privilege or work-product doctrine. *See, e.g., United States v. Reyes*, 239 F.R.D. 591, 602 (N.D.Cal. Dec. 22, 2006) (Breyer, D.J.) (holding that law firms surrendered existing privilege and work-product protection when the firms disclosed the information to the government).

**G.    Request 30 satisfies the *Nixon* criteria and should be upheld.**

The request for communications, reports, or statements by Mr. Chen's direct supervisor satisfies the specificity requirement from *Nixon*. It is limited to the relevant time period and specifically details what records are at issue: the supervisor's statements regarding Mr. Chen.

Apple also contends that the vast majority of the requested records are not relevant, but they are relevant to show the lack of intent to convert the alleged trade secret to the benefit of someone other than Apple, and are also relevant pursuant to defense theories set forth in its under seal pleading. As the Complaint detailed, Apple put Mr. Chen on a Performance Improvement Plan in December 2018 as a result of not performing well at work. ECF No. 1 ¶ 15. The government theory appears to be that Mr. Chen intended to steal trade secrets and take them to a competing company, although as defense counsel explained *infra*, there is no evidence to support that theory. In short, Mr. Chen's working relationship with his direct supervisor is highly relevant. Their relationship provides innocent explanations for some of the conduct that Apple and the government view as incriminating, and it is probative of Mr. Chen's lack of intent to convert any trade secret to the benefit of anyone other than Apple.

**H.    The Court should not quash any part of the subpoena on privilege or work-product grounds without giving Mr. Chen the chance to receive and respond to Apple's forthcoming privilege log.**

As noted above, Mr. Chen disputes Apple's claims that attorney-client privilege or work-product protection merit quashing any part of the subpoena. Apple has committed to preparing a privilege log of material withheld on these grounds. The Court should not quash any part of the subpoena on privilege grounds until after Apple discloses its log to Mr. Chen and after Mr. Chen has a chance to respond. Upon reviewing the log, some of Apple's claims might not be disputed. The log will also allow the defense to respond to the specific claims. Mr. Chen therefore respectfully asks that the Court not quash any part of the subpoena on privilege or work-product grounds until the defense has the chance to respond to the forthcoming privilege

log.  The Court could set a deadline for Apple to produce the log and another deadline for Mr. Chen to file a response, if any.

## CONCLUSION

The subpoena seeks relevant documents related to Mr. Chen's knowledge and intent and to the existence of a trade secret in the first place.  The requests satisfy the *Nixon* factors and Mr. Chen respectfully asks this Court to deny Apple's motion to quash.

Dated: May 16, 2022                                    Respectfully submitted,

_____
Daniel Olmos
Attorney for Defendant Jizhong Chen